UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDUL MUKTADIR,

        CIVIL ACTION NO. 05-72485

    Plaintiff,        District Judge Victoria Roberts

v.        Magistrate Judge Virginia M. Morgan

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

    This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion be denied, that plaintiff's motion be granted, and that the matter be remanded to the Commissioner for further proceedings.

**II. Background**

    On November 20, 2002, plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging that he was disabled due to back, neck, and chest pain related to a car accident he was involved in on May 20, 2001. (Tr. 41, 54, 114-17). Plaintiff was 46 years of age when he filed the applications. His work

1

history includes employment as a cab driver, a waiter, and a cashier.  (Tr. 23, 54, 55, 260).

The Social Security Administration (SSA) denied plaintiff's claims on March 4, 2003. (Tr. 26-30, 117-20).  Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 31-32).  The hearing was held on September 8, 2004 before ALJ Don Harper.  (Tr. 251-84).

On October 29, 2004, the ALJ issued a decision denying plaintiff's claim.  (Tr. 15-24). The ALJ determined that plaintiff suffered from vertebrogenic disorders of the cervical and lumbosacral spine, hypertension, and diabetes mellitus, and that his impairments were "severe" withing the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), but that he did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations.  (Tr. 20, 23).  The ALJ further determined, based upon the hearing testimony of a vocational expert (VE), that plaintiff retained the ability to perform a range of "light" work and that there were a significant number of jobs in the national economy that he could perform.[1]  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.  (Tr. 23-24).

On November 30, 2004, plaintiff  filed a request for review of the ALJ's decision with

---

[1]"Light" work is defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) as follows:
>Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

the SSA's Appeals Council. (Tr. 14). The Council denied the request on April 27, 2005. (Tr. 7-9). The ALJ's decision thus became the final determination of the Commissioner.

On June 22, 2005, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends in his motion that the ALJ posed an inaccurate hypothetical question to the VE and thus could not properly rely on the VE's testimony in determining that he was not disabled. Plaintiff also contends that the ALJ erred in assessing his credibility and that the ALJ failed to give proper consideration to the opinion of Dr. Pramod Raval, one of plaintiff's treating physicians. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). See also 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  <u>See also</u> 42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled.  <u>Foster v. Halter</u>, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims.  20 C.F.R. §§ 404.1520, 416.920.  In <u>Foster</u>, <u>Id</u>. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment."  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards.  <u>Brainard v. Secretary of HHS</u>, 889 F.2d 679, 681 (6th Cir. 1989); <u>Key v. Callahan</u>, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in <u>Brainard</u>, 889 F.3d at 681, that

"[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### IV.  Analysis

#### A.  Accuracy of Hypothetical/Consideration of Treating Physician Opinions

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform light work, with the following restrictions: "simple, unskilled, with one, two, three step instructions; perform pushing and pulling motions with his upper and lower extremities within the light weight restrictions; perform occasional postural activities such as climbing, balancing, stooping, kneeling, crouching or crawling." (Tr. 23).  At the September 8, 2004 administrative hearing, the ALJ posed a hypothetical question to the VE in order to determine whether there were any jobs in the national economy that a person of plaintiff's age and vocational background, with the RFC indicated above, could perform.  In response to the hypothetical, the VE testified that such a person could work as a machine operator, a production worker, a hand packager, or a product inspector, and there were, collectively, 13,300 such jobs in southeastern Michigan.  (Tr. 281-82). The ALJ relied upon this testimony in determining that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy,

5

such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. Plaintiff claims that the hypothetical described above did not present an accurate picture of his functional limitations and, therefore, that the ALJ could not properly rely up the VE's testimony. For the reasons discussed below, the court agrees.

As an initial matter, it is entirely unclear to the court what evidence the ALJ relied upon in rendering the RFC assessment set forth above. The ALJ discussed certain portions of the medical record in his opinion, but did not state with specificity the evidence he relied upon, and none of the portions he referred to make any mention of the weight and other restrictions the ALJ included in the RFC assessment. The ALJ's failure to discuss the basis for his RFC determination is, arguably, grounds alone to remand this matter because it impedes meaningful review by this court. See, e.g., Hurst v. Secretary of Health and Human Services, 753 F.2d 517 (6th Cir. 1985)(articulation of reasons for disability decision essential to meaningful appellate review); see also Bailey v. Commissioner of Social Security, 1999 WL 96920 at **4 (6th Cir.(Ohio))("Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes"); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained"). However, the court is concerned not so much with what was included in the RFC determination as with what was omitted therefrom, and was thus omitted from the hypothetical question at issue. Though the ALJ did not mention it, the weight, postural, and push/pull restrictions the ALJ included in his RFC determination are consistent with, and even more restrictive than, the

findings set forth in the Physical Residual Functional Capacity Assessment (PRFCA) form prepared by a State of Michigan Disability Determination Service (DDS) consulting physician, who's name is illegible. (Tr. 105-12). Thus, there is at least some evidentiary basis for those restrictions. The fatal flaw in the hypothetical is that the ALJ failed to include any sit/stand/walk restrictions despite ample evidence in the record that plaintiff could not sit, stand, or walk for prolonged periods due to his back impairments.

As the ALJ found, plaintiff suffers from vertebrogenic disorders of the cervical and lumbosacral spine. There is objective medical evidence in the record establishing the existence of these conditions. (Tr. 150). While the mere existence of these conditions does not demonstrate that plaintiff is disabled or that his ability to perform work-related activities is significantly restricted, the record indicates that plaintiff's condition is exacerbated by prolonged sitting, standing, or walking. On December 17, 2003, Dr. Miguel A. Lis-Planells, one of plaintiff's treating physicians, noted that plaintiff "reports his back pain to be worse when prolonged sitting and standing, although partially relieved by rest." (Tr. 157). On May 5, 2004, Dr. Lis-Plannels noted again that plaintiff reported that he was experiencing continued back pain, "mainly when he sits for a long time." (Tr. 151). Dr. Lis-Planells recommended that he "avoid prolonged sitting." Id. Dr. Pramod Raval, also treating physician, stated in a narrative report dated August 20, 2004 that plaintiff's pain was aggravated by prolonged sitting or standing. (Tr. 196). Further, the DDS consultant provided in the PRFCA form that plaintiff could stand and/or walk (with normal breaks) for a total of six hours in an eight-hour workday

and that he could sit (with normal breaks) for a total of six hours in an eight-hour workday.[2]  (Tr. 106).  The court also notes that plaintiff testified that prolonged sitting, standing, or walking exacerbated his back condition.  The ALJ found that plaintiff's "assertions of...disability are not fully credible." (Tr. 20).  However, the ALJ did not specifically find that plaintiff's testimony and statements to his physicians regarding his ability to sit, stand, or walk for prolonged periods of time were lacking in credibility, and the record is reasonably consistent with plaintiff's statements in this regard.  In any event, given the objective medical evidence establishing that plaintiff suffers from significant back impairments, the statements contained in the medical record indicating that plaintiff's back pain is exacerbated by prolonged sitting, standing, or walking, the findings of the DDS consultant, and the record as a whole, the court concludes the hypothetical the ALJ posed to the VE was inaccurate due to the ALJ's failure to include therein any sit/stand/walk restrictions.  Accordingly, the ALJ could not properly rely upon the testimony of the VE in determining that plaintiff was not disabled. Varley, supra, 820 F.2d 777, 779 (6th Cir. 1987).

     A related, but legally distinct, shortcoming in the ALJ's decision is that he completely failed to discuss Dr. Lis-Plannells' recommendation that plaintiff avoid prolonged sitting.  In addition, Dr. Raval indicated on several forms that plaintiff was totally disabled.  The ALJ did not even mention Dr. Raval's opinion, as set forth in these forms, or the aforementioned narrative report he prepared, much less discuss those findings.  (Tr. 196, 198-201).  Both Dr. Lis-Plannells and Dr. Raval treated plaintiff over a period of time and saw him on a number of

---

[2]To the extent the ALJ relied upon the consultant's findings in assessing plaintiff's RFC, which he appears to have done, the ALJ, without explanation, entirely ignored this portion of the consultant's report.

occasions. Thus, both are "treating sources" within the meaning of 20 C.F.R. §§ 404.1527, 404.927. In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the Sixth Circuit held that an ALJ's failure to "give good reasons" for the weight given to a treating source's opinion, as required by 20 C.F.R § 404.1527(d)(2), constitutes reversible error, even if the disability determination is otherwise supported by substantial evidence. The Sixth Circuit indicated that such a failure was subject to harmless error analysis, but stated that "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." Id. at 546. Rather, the Court suggested that only a *de minimus* violation of the regulation could constitute harmless error:

> For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and that failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation. However, none of these possibilities is present in the instant case, and the ALJ committed reversible error by depriving Wilson of the procedural right given to him by the agency's regulation.

Id. at 547 (citations omitted).

The ALJ acknowledged Dr. Lis-Planells' recommendation that plaintiff avoid prolonged sitting, but did not provide any explanation for declining to give any weight to that recommendation. Given the other evidence in the record showing that prolonged sitting

9

exacerbated plaintiff's back condition, it was incumbent upon the ALJ under 20 C.F.R § 404.1527(d)(2) to "give good reasons" for his decision to disregard that recommendation. The ALJ erred in failing to do so.  Further, the ALJ's failure cannot be deemed harmless error.  Dr. Lis-Plannells' opinion is not "so patently deficient that the Commissioner could not possibly credit it."  Wilson, 378 F.3d 547.  As for the other harmless error considerations discussed in Wilson, the ALJ's findings, at least with respect to plaintiff' ability to sit for prolonged periods of time, are not consistent with Dr. Lis-Plannell's opinion on that matter, and the ALJ did not otherwise "me[et] the goal of  § 404.1527(d)(2)."  Id.  Thus, the ALJ's failure to comply with § 404.1527(d)(2) as to Dr. Lis-Plannells' opinion constitutes reversible error.  In reaching such a conclusion, the court does not mean to suggest that an ALJ must parse through every word of a treating source's notes and records and provide an explanation for the weight given to each and every finding.  However, where, as here, a treating source makes a recommendation that is fully consistent with the objective medical evidence and other evidence in the record, and the recommendation goes directly to the question of what the claimant is physically capable of doing, § 404.1527(d)(2), as discussed in Wilson, compels that the recommendation be given consideration and that an explanation be given as to the weight given to that recommendation.

Likewise, the court finds that the ALJ committed reversible error in failing to follow the dictates of § 404.1527(d)(2) with respect to Dr. Raval's opinions and findings.  In State of Michigan, Family Independence Agency (FIA) forms dated February 5, 2003, June 24, 2003, September 23, 2003, Dr. Raval checked the "no" box in response to the questions "[c]an patient

work at usual occupation?" and "[c]an patient work at any job?" (Tr. 198-200).[3]  In the August 20, 2004 narrative report, Dr. Raval stated the following:

> Mr. Abdul Musktadir is about 47-year-old Bangladesh male, who was initially evaluated on 5-24-01. Patient was involved apparently in an automobile accident the Sunday prior to initial visit. He appeared was restrained driver. He was trying to park his car in his garage and some drunk driver apparently looks like, hit him from behind. After the impact he had sudden jerking movements of his neck and back area and also had injury of his right knee. He also hit the right side of his chest against the steering wheel and at that time he complained of chest pain and chest wall motion pain which increased during deep inspiration. His working diagnoses at that time were acute cervical sprain and acute lumbosacral sprain with radiculopathy and chest wall pain and to rule out any underlying pericardial effusion. Patient had x-rays of his cervical spine, lumbar spine and right knee. He also was given EMG of both upper and lower extremities. Patient was given Flexeril 10 mg three times day and Lodine XL 400 mg po qd. Patient was advised to have physical therapy and was prescribed cervical lumbar and right knee braces to ease his pain. Patient since then was seen and follow with and at that time he continued to have pain in his neck and low back which radiated to his both upper and lower extremities. Pain was also aggravated by prolonged sitting or standing or any movement which was increased the movement of his neck and back would aggravate his pain. Patient was continued on bed rest, he was given Flexeril 10 mg three times daily and Lodine XL 400 mg qd. Patient since then has been followed by me for his continued pain in his cervical area as well as lumbar area; basic symptomatology apparently appeared to be unchanged. He has radicular nature of pain in his both upper and lower extremities and get aggravated with slight movement of his neck as well as bach area. He is very much restricted about the work he can do now which he use to do before the underlying injury. Patient underwent MRI study of his cervical spine and well as the lumbar spine and appears he has a herniated disc at C4-C5

---

[3] The court also notes that in another FIA Medical Needs form, dated March 19, 2004, Dr. Raval marked the box "YES, but with limitations" in response to the question "[c]an patient work at usual occupation," but then checked the "no" box in response to the question "[c]an patient work at any job." (Tr. 201).

> level and disc protrusion at C6-C7 level. Patient also has disc bulge at L4-5 and small disc protrusion L5-S1 area, MRI was done on 06-01-03. At this time patient has been referred to Dr. Lis-Planelis, who initially evaluated and initially there was no surgical intervention needed, but because of his continued in his cervical area as well as lower back area, patient was again referred back to him. At that time patient did go for lumbar epidural block with at least 50% improvement in his back pain. It appears that he has received a couple of blocks and his pain has improved to 50%. He had advised him to continue with his physical therapy and have follow up with him in six weeks of his initial visit.
>
> IN SUMMARY: This is a 47-year-old Bangladesh male, who was seen by me, because of his motor vehicle accident in resulting injury to neck as well as back area. Patient had MRI diagnosis of herniated disc at C4-C5 level, disc bulge at C6-C7 and L5-S1 herniated disc, also disc bulge at L4-L5. Regarding the prognosis on this patient is guarded. He will continue to have pain in his neck and back area because of underlying pathology which us due to auto accident. Patient did not have any previous finding of this problem and this is a new finding after the accident. He will be very restricted in his work ability because of the pain. He will also need to continued with physical therapy, medications as well as muscle relaxants.

(Tr. 196-97)(typographical and grammatical errors in the original).

There may well be a substantial basis in the record to disregard Dr. Raval's determination that plaintiff is disabled from performing any work. However, as the Sixth Circuit made clear in Wilson, supra, the weight to be assigned to a treating source's opinions and findings is a matter to be decided in the first instance by the ALJ, not the court, unless the opinion is "patently deficient" or there is some other basis for concluding that the ALJ's failure to consider such opinions and findings constitutes harmless error. Wilson v. Commissioner, supra, 378 F.3d at 547. Dr Raval's opinion that plaintiff is disabled, as supplemented by the information contained in the narrative report, is not so patently deficient that the ALJ could not possibly give any credit to it. Further, even if Dr. Raval's disability opinion is not entitled to controlling weight, the

findings set forth in the narrative report may well warrant the inclusion of additional restrictions in the determination of plaintiff's RFC.  Thus, a remand for consideration of Dr. Raval's findings would not be a pointless exercise.  There it otherwise no basis to conclude that the ALJ's total failure to address Dr. Raval's opinions and findings constitutes harmless error. Accordingly, the matter must be remanded for consideration of those opinions and findings, as required under § 404.1527(d)(2).

### B.  Plaintiff's Credibility

Plaintiff's final argument is that the ALJ erred in concluding that "the assertions of the claimant's disability are not fully credible."  (Tr. 20).  Plaintiff contends that this finding is not supported by substantial evidence.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997).  The ALJ cited several reasons in the record for his credibility determination, among them the fact the plaintiff exhibited largely normal range of motion in his spine and extremities and that he underwent conservative treatment for his back impairment, and plaintiff has cited nothing in the record that would warrant the court in disturbing the ALJ's credibility determination. Accordingly, giving the ALJ's conclusion the deference it is due, and viewing the record as a whole, the court finds that the ALJ did not err as a matter of fact or law in his assessment of plaintiff's credibility.

### V.  Conclusion

For the reasons stated above, the court finds that the ALJ's decision is not supported by

13

substantial evidence.  Further, the court finds, that the record does not support a judicial award of disability benefits.  See Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994)("If the court determined that substantial evidence does not support the Secretary's decision, the court can reversed the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequate establishes a plaintiff's entitlement to benefits").  Accordingly, the court recommends that the Commissioner's motion for summary judgment be **DENIED**, that plaintiff's cross-motion for summary judgment be **GRANTED**, and that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.  On remand, the Commissioner shall (1) reconsider plaintiff's RFC, (2) obtain further VE testimony based upon an accurately formed hypothetical, and (3) "give good reasons" for the weight assigned to the findings and opinions of Dr. Lis-Plannells and Dr. Raval, as required by 20 C.F.R § 404.1527(d)(2) .

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                              s/Virginia M. Morgan
                                              VIRGINIA M. MORGAN
Dated: October 18, 2005           UNITED STATES MAGISTRATE JUDGE

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record and the Social Security Administraton by electronic means or U.S. Mail on October 18, 2005.

                                s/Jennifer Hernandez
                                Case Manager to
                                Magistrate Judge Morgan